WIGGINS, Justice (dissenting).
I respectfully dissent for a number of reasons. Before I delve into the crux of my dissent based on the language of Iowa Code section 709.1(1) (2015), I discuss some preliminary matters.
First, I mention the distinction between fraud in fact and fraud in the inducement. Fraud in fact means the defendant misrepresents the nature of the act performed. State v. Bolsinger , 709 N.W.2d 560, 564 (Iowa 2006). For example, when the victim consents to a medical examination but the defendant performs a sex act instead, it is fraud in fact. Id. In contrast, fraud in the inducement means the defendant misrepresents the circumstances surrounding the act. Id. For example, when the defendant asks for permission to touch the genitals under the guise of checking for testicular cancer and performs the act in the manner he said he would for purposes of sexual gratification, it is fraud in the inducement. See id. at 562.
We stated in Bolsinger that "[f]raud in fact vitiates consent; fraud in the inducement does not." Id. at 564. The negative implication of this reasoning is that there *674 is valid consent in the first instance for both types of fraud.
In terms of legal consequences, I think it is irrelevant whether the deception was to a facet of Michael Kelso-Christy's identity or to the whole of another's identity, although the latter may be more morally reprehensible. The majority's decision implicitly creates different tiers or degrees of fraud in the inducement. Yet we did not create tiers or degrees of fraud in the inducement in Bolsinger . Rather, in Bolsinger , we treated fraud in the inducement as an umbrella term that encompasses fraud in part and fraud in whole.
It is true that in United States v. Booker , the United States Court of Military Appeal stated, "[C]onsent to the [sex] act is based on the identity of the prospective partner." 25 M.J. 114, 116 (C.M.A. 1987). However, the court qualified this statement in a footnote "[i]n light of the two separate opinions." Id. at 116 n.2. In distinguishing fraud in fact from fraud in the inducement, Judge Cox, the author of the lead opinion, stated, "I must acknowledge that perhaps I have treated the subject of 'fraud in the factum ' too gently." Id. Judge Cox continued, "[F]or there to be actual consent, a woman must [agree] to the penetration of her body by a particular 'membrum virile ,' ...; it is quite irrelevant whether she knows the 'real' identity of the owner thereof." Id. (citation omitted).
Our caselaw recognizes the distinction between fraud in fact and fraud in the inducement. Our caselaw does not debate the question as to whether vitiating consent concerns only the act itself or also the actor. The former goes to fraud in fact while the later goes to fraud in the inducement. We drew that line in Bolsinger .
Assuming the logic behind the distinction between fraud in the inducement and fraud in fact is sound, the case at hand is a fraud-in-the-inducement case and, as such, Kelso-Christy's impersonation of S.P. did not vitiate S.G.'s consent. This reasoning alone undermines the majority's outcome.
Second, the fact that the court convicted Kelso-Christy of burglary in the second degree, rather than sexual abuse, does not affect the outcome of my dissent. I acknowledge the crime of sexual abuse is a general intent crime. I also acknowledge that because the court convicted Kelso-Christy of burglary, the issue is whether Kelso-Christy entered S.G.'s residence with the specific intent to commit sexual abuse.
The majority uses State v. Ball , 262 N.W.2d 278, 280 (Iowa 1978), to support its proposition that "it has long been the law in Iowa that consent to sex with one man cannot imply consent to sex with another" to unpack Kelso-Christy's mental state at the time he entered S.G.'s residence. In Ball , the defendant sought to introduce evidence of the victim's sexual conduct with other people during the year prior to the incident in which the defendant raped her. Id. at 279. We determined the evidence was irrelevant to the issue of whether the victim had consented to have sexual intercourse with the defendant. Id. at 281. In other words, we held the victim's past sexual history with third parties did not tend to show the victim consented to sexual intercourse with the defendant.
Here, Kelso-Christy is not attempting to admit evidence of S.G.'s past sexual conduct with third parties to show S.G. consented to have sexual intercourse with him. Nevertheless, the majority's expansion of Ball to the facts of this case makes sense when supporting the majority's conclusion that Kelso-Christy could not have believed S.G. consented to have sexual intercourse with him. However, analyzing specific intent is putting the cart in front of the horse. In the end, it ultimately does *675 not matter what Kelso-Christy intended because the language of Iowa Code section 709.1(1) does not provide for sexual abuse by fraud or deception. I would therefore find Kelso-Christy did not commit sexual abuse pursuant to section 709.1(1). This leads me to my third point.
Iowa Code section 709.1(1) provides,
Any sex act between persons is sexual abuse by either of the persons when the act is performed with the other person in any of the following circumstances:
1. The act is done by force or against the will of the other . If the consent or acquiescence of the other is procured by threats of violence toward any person or if the act is done while the other is under the influence of a drug inducing sleep or is otherwise in a state of unconsciousness, the act is done against the will of the other.
Iowa Code § 709.1(1) (emphasis added).
As a general rule of statutory construction, we narrowly and strictly construe criminal statutes and resolve doubts in the defendant's favor. State v. Halverson , 857 N.W.2d 632, 637 (Iowa 2015). "To the extent there is an unresolved ambiguity, our cases require a narrow construction of the statute." Id. at 638. The ambiguity here is whether "against the will of the other" encompasses deception.
Our legislature has not provided for sexual abuse by deception in section 709.1(1). We must not write words into the statute. Auen v. Alcoholic Beverages Div. , 679 N.W.2d 586, 590 (Iowa 2004). "In the end, a criminal statute cannot be expanded beyond those circumstances intended by the legislature to be within the scope of the statute." State v. Meyers , 799 N.W.2d 132, 141 (Iowa 2011).
I examine two instructive cases. In Suliveres v. Commonwealth , the defendant impersonated the identity of his brother-the victim's boyfriend-and had sexual intercourse with the victim. 449 Mass. 112, 865 N.E.2d 1086, 1088 (2007). The victim believed she was having intercourse with her boyfriend, and had she known it was the defendant, she claimed she would not have consented. Id.
The court addressed whether it should overrule Commonwealth v. Goldenberg , 338 Mass. 377, 155 N.E.2d 187 (1959), in which it had held consent to a sex act obtained through fraud or deceit was not rape. Suliveres , 865 N.E.2d at 1087. The court examined the rape statute, which provides,
(b) Whoever has sexual intercourse or unnatural sexual intercourse with a person and compels such person to submit by force and against his [or her] will, or compels such person to submit by threat of bodily injury, shall be punished ....
Id. at 1088 (quoting Mass. Gen. Laws ch. 265, § 22(b) ).
I acknowledge that the Massachusetts rape statute provides for "by force and against his [or her] will." See id. (emphasis added) (quoting Mass. Gen. Laws ch. 265, § 22(b) ). Moreover, I acknowledge Goldenberg concluded "[f]raud cannot be allowed to supply the place of the force [that] the statute makes mandatory[.]" Id. (alteration in original) (quoting Goldenberg , 155 N.E.2d at 192 ). However, that is not the point. I rely on Suliveres for the principle that the judiciary may not usurp the role of the legislature to pen an outcome-driven opinion.
The court in Suliveres honored the doctrine of separation of powers in concluding the statute did not define rape to include fraudulently obtaining consent to sexual intercourse. See id. at 1090. It reasoned the legislature is aware of existing statutes and the prior state of the law when it enacts legislation. Id. It further reasoned the legislature did not overrule Goldenberg *676 in forty-eight years although it had amended the statute three times and despite the changing attitudes and scholarship concerning rape. Id. Most importantly, the court reasoned, "The [l]egislature is free to amend the rape statute or create a new substantive offense to encompass the conduct at issue, as many other States have done." Id. "However, where the [l]egislature has chosen not to do so, '[i]t is not for this court ... to rewrite the clear intention expressed by the statute.' " Id. (quoting Commonwealth v. Leno , 415 Mass. 835, 616 N.E.2d 453, 457 (1993) ). Thus, the court held under the statute, fraudulently procuring consent to sexual intercourse did not constitute rape. Id. at 1091.
Moreover, the court assumed the defendant committed fraud in the inducement. Id. at 1089. Notably, the court did not give any weight to the fact the defendant impersonated another's identity in whole, rather than just an aspect of his identity. See id. at 1089.
In People v. Hough , the defendant impersonated the identity of his twin brother-the victim's boyfriend-and deceived the victim into having sexual intercourse with him. 159 Misc.2d 997, 607 N.Y.S.2d 884, 884 (Dist. Ct. 1994). The court addressed whether the victim had actually consented to sexual intercourse with the defendant when the defendant had procured her consent by impersonating her boyfriend. Id. at 885. The New York sexual misconduct statute at the time provided, "A person is guilty of sexual misconduct when: ... Being a male, he engages in sexual intercourse with a female without her consent." Id. at 884 (quoting N.Y. Penal Law § 130.20(1) ).[2] The court read this statute in conjunction with section 130.05, which provides the definition of lack of consent. Id. at 885. The court reasoned the victim did not claim her lack-of-consent was based on either "forcible compulsion" or "incapacity to consent." Id. Instead, lack of consent stemmed from the victim's "mistaken belief resulting from [the] defendant's alleged fraud." Id.
Admittedly, for the crime of sexual abuse, as opposed to that of sexual misconduct, the statute provides that lack of consent encompasses "any circumstances in addition to forcible compulsion or incapacity to consent in which the victim does not expressly or impliedly acquiesce in the actor's conduct." Id. (citing N.Y. Penal Law § 130.05(2)(c) ). The plain language of the statute reflects the New York legislature's intent to expand the definition of lack of consent. However, our legislature has not done so. Thus, because Iowa Code section 709.1(1) does not include fraud or deception, I find the logic of Hough applicable to this case.
In fact, the court observed, "In general, in the absence of a statute , where a woman is capable of consenting and does consent to sexual intercourse, a man is not guilty of rape even though he obtained the consent through fraud or surprise." Id. at 886 (emphasis added). The court relied on basic rules of statutory construction to conclude the legislature had defined what constitutes lack of consent and had not included fraud or deception in the statute. Id. at 886-87. In affirmatively stating "[c]ourts should avoid judicial legislation[,]" the court deferred to the language of the applicable statutes. Id. at 887. The court reasoned, "It is a basic tenet of statutory law that where the legislature fails to include a matter within the scope of an act, its exclusion was intended ." Id. at 886 (emphasis added). Thus, the court concluded the legislature intended to exclude *677 fraud or impersonation cases from the definition of lack of consent, which is a necessary element to prove sexual misconduct under section 130.20(1). Id. at 887.
Iowa Code section 709.1(1) does not provide for sexual abuse by deception. If the legislature wants to subsume fraudulently obtaining consent to sexual intercourse under the statutory definition of sexual abuse, then it knows how to do so. For example, other states have codified fraudulent inducement as a form of rape or sexual misconduct. See, e.g. , Ala. Code § 13A-6-65(a)(1) (Westlaw current through Act 2018-124, Act 2018-126 through Act 2018-151, and Act 2018-153 through Act 2018-392) (stating "[a] person commits the crime of sexual misconduct if" the man has sexual intercourse with a woman "where consent was obtained by the use of any fraud or artifice"); Cal. Penal Code § 261(a)(5) (West, Westlaw through ch. 10 of 2018 Reg. Sess.) (stating rape constitutes "sexual intercourse accomplished with a person not the spouse of the perpetrator ... [w]here a person submits under the belief that the person committing the act is someone known to the victim other than the accused, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce the belief"); Kan. Stat. Ann. § 21-5503(a)(4)-(5) (West, Westlaw through 2018 Reg. Sess.) (providing rape constitutes "sexual intercourse with a victim when the victim's consent was obtained through a knowing misrepresentation made by the offender"); Mich. Comp. Laws Ann. § 750.520b(1)(f)(v ) (West, Westlaw through P.A. 2018, No. 111 and 114) (providing sexual penetration of another "through concealment" constitutes criminal sexual conduct in the first degree); Okla. Stat. Ann. tit. 21, § 1111(6) (West, Westlaw through ch. 65, 2018 2d Reg. Sess.) (providing rape constitutes sexual intercourse in which "the victim submits to sexual intercourse under the belief that the person committing the act is a spouse, and this belief is induced by artifice, pretense, or concealment practiced by the accused or by the accused in collusion with the spouse with intent to induce that belief"); Tenn. Code Ann. § 39-13-503(a)(4) (West, Westlaw through 2018 2d Reg. Sess.) (stating "sexual penetration [that] is accomplished by fraud" constitutes rape).
The majority should decide the instant case on the language of the statute, not on policy. We are not in a position to engage in judicial legislation. Moreover, we are not in a position to determine the wisdom and propriety of the legislature's actions on matters within its authority. Post- Bolsinger , the legislature did not amend section 709.4(1), which defines sexual abuse in the third degree, to include fraud in the inducement. Had the legislature intended to criminalize third-degree sexual abuse by fraud in the inducement, it would have amended section 709.4(1) after we concluded in Bolsinger that fraud in the inducement does not vitiate consent and therefore fraudulently procuring a sex act does not constitute sexual abuse in the third degree. See 709 N.W.2d at 564.
As a caveat, I emphasize that I am not saying the defendant did not commit a wrongful act. See Hough , 607 N.Y.S.2d at 887. Rather, because the allegations of fact do not contain all the necessary elements to find Kelso-Christy guilty of sexual abuse, the State could have charged the defendant with another crime. See id.
Lastly, the majority's holding stands for the proposition that misrepresentation as to the whole in the course of seduction to achieve sexual intercourse constitutes sexual abuse because the misrepresentation may be material to the victim. Specifically as to fraud in the inducement, say for example, John meets a woman on the Internet *678 supposedly named Jane. Jane represents herself on the Internet as a rich business owner who can advance John's career if they have sex. In reality, Jane is really Cindy who is unemployed and likes to have casual sex with numerous partners. Cindy has been impersonating the identity of Jane to procure sex. John agrees to have sexual intercourse with Cindy based on Cindy's misrepresentations. Based on the majority's holding, fraud in the inducement does vitiate John's consent and permits the State to prosecute Jane for sexual abuse. Again, I emphasize such a holding is inconsistent with that of Bolsinger for the reasons I have already stated in my dissent.
Accordingly, I would reverse the conviction.
Appel, J., joins this dissent.

The statute now uses gender-neutral terms but the substance remains the same. See N.Y. Penal Law § 130.20(1) (McKinney, Westlaw through L. 2018, ch. 1-3).