2014-988 S CRThe People of the State of New York, Respondent,
against
Kristopher M. Kahl, Appellant.



Appeal from two judgments of the District Court of Suffolk County, First District (James A. McDonaugh, J.), rendered March 19, 2014. The judgments convicted defendant, after a nonjury trial, of forcible touching and sexual abuse in the third degree, respectively.




ORDERED that the judgments of conviction are affirmed.
Defendant was charged, in separate accusatory instruments, with one count of forcible touching (Penal Law § 130.52), and one count of sexual abuse in the third degree (Penal Law § 130.55). The testimony adduced at a nonjury trial established that, on November 4, 2011, defendant, an emergency medical technician (EMT), was transporting a 23-year-old woman, who was on a stretcher in the back of an ambulance, to a hospital. After defendant pushed on the left side of her stomach, he asked the woman to slightly lower her pants. The woman complied, and testified that she had assumed that defendant was going to push on the right side of her abdomen. Instead, he inserted his gloved finger into her vagina. The woman described the sensation as "[f]orcible enough to feel the hand hit the outside so when I felt it hit me, I jumped back, out of more of a shock because I wasn't expecting that to happen." Defendant did not tell her in advance what he was going to do. After he put his finger in her vagina, defendant told the woman that "if it was uncomfortable he could provide . . . lubrication." At that point, she told defendant, "[j]ust do what you have to do." Defendant removed his finger from the woman's vagina and pulled his glove off. He then told her, "I'm sorry if that was uncomfortable, I have to check for internal bleeding." The woman testified that defendant's finger was inside her vagina for a period of time that she described as "[n]ot long at all."
Defendant provided statements to the investigating detective and the ambulance company omitting the fact that he had placed his finger in the woman's vagina. Only after the detective confronted defendant with the woman's allegations did he admit that he committed the act, claiming that he did so to check for internal bleeding. 
After the trial, defendant was convicted as charged.
On appeal, defendant contends that the judgments of conviction should be reversed, because the determination that he committed the act for the purpose of sexual gratification is against the weight of the evidence. In the alternative, defendant contends that the determination of lack of consent was against the weight of the evidence, as the woman acquiesced to the penetration of her vagina, even if the acquiescence was obtained under false pretenses, fraud, or deceit. Finally, defendant claims that the verdict of guilt of forcible touching was against the [*2]weight of the evidence, as there was no application of force.
In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342 [2007]), we accord great deference to the factfinder's opportunity to view the witnesses, hear their testimony, observe their demeanor and assess their credibility (see People v Lane, 7 NY3d 888, 890 [2006]; People v Mateo, 2 NY3d 383, 410 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]; People v Zephyrin, 52 AD3d 543, 543 [2008]). Weight of the evidence review requires that the reviewing court determine if an acquittal would not have been unreasonable, and, if so, the court must weigh the conflicting testimony, review any rational inferences that may be drawn from the evidence, and evaluate the strength of such conclusions, to determine whether the trier of fact was justified in finding the defendant guilty beyond a reasonable doubt (see People v Danielson, 9 NY3d at 348; People v Bleakley, 69 NY2d at 495; People v Zephyrin, 52 AD3d at 543). The resolution of credibility issues is primarily a determination for the trier of fact, which should not be disturbed "unless the trier of fact has failed to give the evidence the weight it should be accorded" (People v Khanna, 14 Misc 3d 128[A], 2006 NY Slip Op 52507[U], *1 [App Term, 2d Dept, 9th & 10th Jud Dists 2006]; see People v Romero, 7 NY3d 633, 644-645 [2006]). In this case, an acquittal would not have been unreasonable. However, we conclude that the verdict of guilt was not against the weight of the evidence, and that the judgments of conviction should be affirmed.
Penal Law § 130.52 provides that a person is guilty of forcible touching "when such person intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire." Penal Law § 130.55, in pertinent part, provides that a person is guilty of sexual abuse in the third degree "when he or she subjects another person to sexual contact without the latter's consent." Penal Law § 130.00 (3) states, in pertinent part, that "[s]exual contact . . . means any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party." Penal Law § 130.05 (2) (c) states that "[w]here the offense charged is sexual abuse or forcible touching," lack of consent results from "any circumstances, in addition to forcible compulsion or incapacity to consent, in which the victim does not expressly or impliedly acquiesce in the actor's conduct."
"[T]he inquiry as to whether a defendant was seeking sexual gratification can be inferred from his or her conduct" (People v Fuller, 50 AD3d 1171, 1175 [2008]). "[S]exual gratification is a subjective determination which may be inferred from the nature of the acts committed and the circumstances under which they occurred" (People v Rodriguez, 1 Misc 3d 8, 9 [App Term, 2d Dept, 2d & 11th Jud Dists 2003]). Here, uncontroverted evidence was adduced at the trial, from the EMT that drove the ambulance, the paramedic who worked with defendant on November 4, 2011, a director of the ambulance company that employed defendant, and the person in charge of training EMTs in Suffolk County, that an EMT would only be authorized to place his finger in a patient's vagina if she was delivering a baby while in the ambulance, particularly a baby with the umbilical cord wrapped around its neck. Notwithstanding defendant's assertions, the evidence conclusively established that, other than the above circumstance, it is a violation of protocol for an EMT to put a finger in a female patient's vagina even if the EMT suspects that she is bleeding internally.
Before placing his finger in her vagina, defendant did not tell the victim what he was going to do, and certainly did not tell the victim that he was going to check for internal bleeding. It was only after defendant placed his finger in her vagina that the victim made the statement that defendant contends was express or implied acquiescence to the digital examination: "Just do what you have to do." Defendant admitted to the investigating detective that placing a finger in a patient's vagina was against protocol. Contrary to defendant's claim that he was an inexperienced EMT who made a mistake, defendant had been an EMT for five years, and had been certified as an advanced EMT, with additional training in critical care. Furthermore, we reject defendant's contention that a digital exam of the patient's genitalia is not so far removed from a visual exam. [*3]Under the totality of the circumstances, defendant's intent to subject the victim to sexual contact and that the purpose of his act was sexual gratification can be inferred from his conduct (see People v Yavru-Sakuk, 3 Misc 3d 36, 37-38 [App Term, 2d Dept, 2d & 11th Jud Dists 2004]).
As indicated above, defendant claims that the victim expressly or impliedly acquiesced to the sexual contact. However, the alleged acquiescence did not occur until after defendant had placed his finger in the victim's vagina. While the victim never protested the contact, the "absence of a verbal protest by the victim does not compel a finding that she impliedly acquiesced in the sexual contact to which she was subjected by defendant" (People v White, 26 Misc 3d 129[A], 2010 NY Slip Op 50022[U], *1 [App Term, 1st Dept 2010]; see People v D'Alessio, 9 Misc 3d 64, 65 [App Term, 1st Dept 2005]). In any event, even if, as defendant argues, the victim acquiesced in defendant's insertion of his finger in her vagina, albeit through fraud or deceit, we find that any such acquiescence would be vitiated because it was obtained by "fraud in the fact," in that the victim believed she was consenting to a medical examination but instead was subjected to a sexual act (State v Bolsinger, 709 NW2d 560, 564-565 [Iowa 2006]; see State v Tizard, 897 SW2d 732 [Tenn Crim App 1994]; McNair v State, 108 Nev 53, 825 P2d 571 [1992]; People v Ogunmola, 193 Cal App 3d 274, 238 Cal Rptr 300 [1987]; LaFave, Substantive Criminal Law § 6.5 [a], at 506 [2d ed 2003]; but see Suliveres v Commonwealth, 449 Mass 112, 865 NE2d 1086 [2007]). 
Defendant accomplished his penetration of the victim's vagina with his finger "under the guise of making a physical examination" (75 CJS Rape § 16). Moreover, defendant did not claim that he was performing an examination—checking for internal bleeding— until after he had removed his finger from the victim's vagina (cf. People v Hough, 159 Misc 2d 997 [Nassau Dist Ct 1994]).
Finally, we find that the verdict of guilt of forcible touching was not against the weight of the evidence, as defendant's act was "done with the relevant mens rea . . . involving the application of some level of pressure to the victim's sexual or intimate parts" (People v Guaman, 22 NY3d 678, 684 [2014]; see People v Hatton, 26 NY3d 364, 369 [2015]).
Accordingly, the judgments of conviction are affirmed.
Marano, P.J., and Garguilo, J., concur.
Decision Date: January 24, 2017